SCHOTT, Judge.
Defendants have appealed from a judgment in plaintiff’s favor for damages sustained by him and his minor son in an automobile accident which occurred at the intersection of Sauve Road and Hyde Place in Jefferson Parish.
This is a “T” intersection with Sauve Road running east-west and Hyde Place intersecting on the north side only. A stop sign requires traffic entering from Hyde Place to come to a stop. Before the accident, plaintiff’s minor son David had been proceeding east on Sauve Road and while in the process of making a left turn into Hyde Place the left rear of his automobile collided with the left front corner of the automobile driven and owned by defendant Barton. Barton had stopped at the stop sign on Hyde Place which was located 26 feet from the north curb line of Sauve Road, had moved to within a short distance from the Sauve curb line and was still in the right lane of Hyde, preparing to enter Sauve Road when the collision occurred.
The evidence consisted of the testimony of Mr. and Mrs. Barton, David DeVun and an investigating officer. At the conclusion of the trial of the case the judge in colloquy with counsel made several statements which provide us with an insight into his findings. These statements include: 1) the police officer was unworthy of any credibility; 2) Barton had not entered Sauve Road when the impact occurred; 3) Barton was negligent because he was approaching the intersection from an inferior street; and 4) the only question to be decided was if David DeVun was guilty of contributory negligence. It follows that he found that David was not guilty of contributory negligence, and it is this finding which we have scrutinized.
David testified as follows: As he proceeded east along Sauve Road at approximately 25 miles per hour he first observed the Barton vehicle when he was 15 to 20 yards away, at which time it was well past the stop sign in motion and veering to the left approaching Sauve Road. When David started making his turn into Hyde he was going about 10 miles per hour. In answer to the question of what happened when he got to the intersection he said, “I saw the vehicle start to come out of Hyde and I proceeded to make my turn anticipating that he would stop. He did not stop and I was struck.”
The following questions and answers were elicited from David on cross examination:
“Q. Now, when you first saw him what did you notice about the driver if anything?
A. He wasn’t looking the direction I was coming. He was looking toward the left.
Q. And, did you notice this from the moment you first saw him?
A. No, sir.
Q. When did you first notice that he was looking away from you?
A. When I got closer to the intersection.
Q. Did you blow your horn?
A. No, sir.
Q. Did you, after seeing him for the first time, about a foot and a half *1020 from the curb line and proceeding out at five to seven miles an hour, did you realize that he was coming out into Sauve in the direction that you were going to proceed into?
A. Yes, sir.
Did you in any wise alter your course of action? <©
To try and avoid from the accident, yes, sir. í>
What did you do? «O
I tried to make my turn wider in order for him to miss me but he didn’t.” í>
Considering the foregoing testimony and rejecting in toto the testimony of the Bartons and the police officer, we are compelled to conclude that David was guilty of contributory negligence. It is universally understood that a driver must take reasonable measures to avoid an accident. David’s testimony is to the effect that he saw Barton moving out into Sauve Road directly in his path and looking in the opposite direction.
Under these circumstances David had a duty as a left turning motorist not to execute his turn, which included crossing a portion of the lane in which Barton was moving, until he was sure the turn could be made safely. David was charged with the duty of stopping, if necessary, to prevent this accident with Barton who was preparing to turn left and was oblivious of David’s approach from the right. David’s explanation that he tried to make a wide enough turn to avoid coming into contact with Barton does not excuse him, in effect, from running his automobile into the path of Barton’s. It was not reasonable for David to proceed in the hope that Barton might see him in time to stop and thereby give David the room he needed to make the turn.
Accordingly, the judgment appealed from is reversed and there is judgment in favor of defendants and against plaintiff, dismissing his suit at his cost.
REVERSED AND RENDERED.